# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **In re: PARAQUAT PRODUCTS LIABILITY LITIGATION**  **This Document Relates to Case Nos.:** 22-pq-807, 22-pq-808, 22-pq-809, 22-pq-893, 22-pq-894, and 22-pq-1102. | Case No. 3:21-md-3004-NJR  MDL No. 3004 |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court are motions to remand filed by Plaintiffs in six cases in this multidistrict litigation ("MDL") concerning the herbicide Paraquat. In each of the six cases, Defendant Syngenta Crop Protection LLC ("Syngenta") removed the action from Delaware state court to federal court, purportedly on the bases of diversity jurisdiction and federal question jurisdiction. Plaintiffs ask the Court to remand these cases to state court because their claims do not arise under federal law. Plaintiffs also contend that Syngenta is a Delaware corporation and, thus, the forum-defendant rule in 28 U.S.C. § 1441(b)(2) should have barred Syngenta from removing the cases in the first place. Syngenta asserts the cases were properly removed under what is known as "snap removal." Syngenta argues that the majority of courts allow snap removal under the plain language of the statute, and it urges this Court to do the same.

For the following reasons, the undersigned finds that Plaintiffs' claims do not arise under federal law and that the practice of snap removal defeats the legislative purpose of the forum-defendant rule and leads to absurd results. Accordingly, Plaintiffs' motions to remand are granted.

## BACKGROUND

Plaintiffs in this MDL generally allege they developed Parkinson's disease from exposure to Paraquat that was designed, manufactured, and distributed by Defendants Syngenta and Chevron U.S.A., Inc. The Plaintiffs who are the subject of this Order each filed their complaint in the Superior Court of Delaware before Syngenta removed the cases to federal court and tagged the cases for transfer to this MDL—sometimes within hours of the case being filed.

Syngenta asserts that federal subject matter jurisdiction is proper under 28 U.S.C. § 1332(a) because complete diversity exists between the parties and the amount in controversy exceeds $75,000. Syngenta, a citizen of Delaware, further asserts that removal is proper notwithstanding the forum-defendant exception provided in § 1441(b)(2). That provision prohibits removal when "any of the parties in interest properly joined and served as defendants" is a citizen of that state. Syngenta claims it removed the actions prior to being "properly served;" thus, the forum-defendant rule is inapplicable. Finally, Syngenta argues that Plaintiffs' claims are also removable because they arise under federal law.

Plaintiffs have moved to remand each case to Delaware state court and, in doing so, urge this Court to put an end to so-called snap removal—removing a case to federal court before Plaintiffs have an opportunity to serve a forum defendant. Plaintiffs argue that the plain language of the forum-defendant rule does not unambiguously permit snap removal, and it is silent as to the time when service must be completed. Thus, their motions to remand must be granted. Plaintiffs alternatively ask the Court to read the statute in harmony with the purpose behind the forum-defendant rule and to remand their cases to state court.

LEGAL STANDARD

A defendant may remove a civil action from state court when a district court has original jurisdiction over the action. *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748 n.2 (2019) (citing 28 U.S.C. § 1441(a)). District courts shall have original jurisdiction over all civil actions arising under federal law, as well as over civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. 28 U.S.C. §§ 1331, 1332(a)(1). Even where the statutory requirements for diversity jurisdiction under § 1332(a) are met, however, the forum-defendant rule disallows removal based on diversity jurisdiction under § 1332(a) "if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2).

The party invoking federal jurisdiction has the burden of establishing that it exists. *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 404 (7th Cir. 2004) (a removing defendant must demonstrate a "reasonable probability" that subject-matter jurisdiction exists). When a court evaluates a motion to remand, "a plaintiff's choice of forum is presumed valid, and the Court must resolve any doubts about jurisdiction in favor of remand." *D.C. ex rel. Cheatham v. Abbott Labs. Inc.*, 323 F. Supp. 3d 991, 993 (N.D. Ill. 2018) (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 758 (7th Cir. 2009)).

DISCUSSION

I.  **Federal Question Jurisdiction**

The Court first addresses Syngenta's argument that Plaintiffs' claims raise substantial questions of federal law and, thus, removal was proper under 28 U.S.C. § 1331. For if Plaintiffs' claims arise under federal law, the Court need not address the propriety of snap

removal.

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation and citation omitted). Federal district courts have been granted authority by Congress to exercise original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." *Id.* at 257 (quoting 28 U.S.C. § 1331).

An action can "arise under" federal law in two ways. *Id.* First, and most commonly, a case arises under federal law when a federal statute provides for the cause of action asserted. *Id.* In rare circumstances, however, even a claim based on state law can be deemed to "arise under" federal law. Under this second category of cases, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 258 (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). If all four requirements are met, jurisdiction is proper in federal court.

Here, Syngenta argues that although Plaintiffs pleaded violations of state law, their claims arise under federal law because they allege violations of duties arising out the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). Specifically, Plaintiffs allege that Defendants violated duties established by FIFRA by failing to warn about the risks that Paraquat allegedly posed to human health. Thus, the resolution of Plaintiffs' claims necessarily raises the question of what duties Defendants had under FIFRA, a federal statute, to warn about an alleged connection between Paraquat and Parkinson's disease. Syngenta argues this issue is actually disputed because the parties disagree as to whether Defendants

had an obligation to warn about, or protect the public from, the alleged association between Paraquat and Parkinson's disease, despite the fact that the EPA has concluded that no such connection exists. Syngenta also asserts the federal issue is substantial because the federal government has a strong interest in the nationwide regulation of pesticides and in determining the scope of FIFRA. And finally, Syngenta contends the federal issue is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress" because federal courts hold exclusive jurisdiction to hear challenges to the EPA's authority to enforce FIFRA.

In response, Plaintiffs argue there is no substantial federal question at issue here. Not only has Congress determined there is no private right of action under FIFRA, but it also has established that FIFRA's requirements do not affect state law causes of action. Plaintiffs cite to *Bates v. Dow Agrosciences LLC*, in which the Supreme Court held that while FIFRA itself does not provide a federal remedy to individuals who are injured as a result of a manufacturer's violation of FIFRA's labeling requirements, states are permitted to provide their own remedies. *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 442 (2005) ("Nothing in the text of FIFRA would prevent a State from making the violation of a federal labeling or packaging requirement a state offense, thereby imposing its own sanctions on pesticide manufacturers who violate federal law.").

The Court acknowledges that the absence of a federal cause of action is "evidence relevant to, but not dispositive of" the issue of federal jurisdiction. *Grable*, 545 U.S. at 318. Nevertheless, it finds this is not one of the rare circumstances where a state law cause of action arises under federal law. Plaintiffs bring claims for strict products liability design defect, strict products liability failure to warn, negligence, and breach of implied warranty of

merchantability under state law. (*See, e.g.*, Case No. 22-pq-1102 at Doc. 1-1). And "FIFRA does not preempt state-law tort or contract actions simply because they bear on a product subject to federal registration and labelling requirements." *In re Roundup Products Liability Litigation*, No. 16-MD-02741-VC, 2017 WL 3129098, at *1 (N.D. Cal. July 5, 2017) (citing *Bates*, 544 U.S. at 449-54). In *Roundup*, the court cited *Gunn* in holding that FIFRA itself "forecloses" the possibility of a colorable *Grable* theory:

> FIFRA intentionally preserves parallel state-law actions, along with any state-specific variations in liability that aren't inconsistent with federal law. Against that backdrop, there cannot possibly be a 'substantial' interest in hearing disputes of this kind in a federal forum—and certainly no interest consistent with the balance of state and federal judicial power as Congress has envisioned it.

*Id.* (internal citation omitted).

Here, much like Monsanto in *Roundup*, Syngenta argues that Plaintiffs' complaint references federal duties owed by the distributors of pesticides under FIFRA and alleges that Syngenta and Chevron violated these obligations. But "[a]ll sorts of burdens and obligations are defined in federal law. If that alone sufficed for federal jurisdiction, routine applications of the Supremacy Clause could be grounds for removal. That is not what *Grable* stands for." *Id.* (citing *Gunn*, 133 S. Ct. at 1064; *Grable*, 545 U.S. at 319.

Syngenta argues the *Roundup* court got it wrong and "fundamentally misunderstood" the duties imposed by FIFRA. It asserts the question of whether exposure to Paraquat leads to an increased likelihood of developing Parkinson's disease is a question that implicates the existence and scope of Defendants' duties under FIFRA and has broad implications for the federal system as a whole. Syngenta explains that the EPA has authority under FIFRA to regulate Paraquat—including to review and approve warnings, directions, and packaging.

And the EPA has concluded that the weight of the evidence is insufficient to link Paraquat exposure to Parkinson's disease in humans. *See* PARAQUAT DICHLORIDE, INTERIM REGISTRATION REVIEW 18 (July 13, 2021).[1] Thus, Syngenta argues, the issues in this MDL directly implicate a substantial federal issue.

The Court notes, however, that Syngenta raised these same arguments in their affirmative defenses. In its defenses, Syngenta stated that the EPA has primary jurisdiction over Plaintiffs' claims under FIFRA, that Plaintiffs' claims are preempted by FIFRA, that Plaintiffs' claims are barred by conflict preemption with regard to FIFRA, and that Syngenta complied with FIFRA, its implementing regulations, and other mandates imposed by the USDA and the EPA. *See, e.g.*, Case No. 21-1218 at Doc. 9. And the Supreme Court has long held that a case may not be removed to federal court on the basis of a federal *defense*, including preemption. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987) ("[I]t is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue.").

Thus, while the defenses raised by Syngenta may be anticipated by allegations in Plaintiffs' complaints, their existence do not make the case removable to federal court. Instead, the Court must turn to the well-pleaded complaint rule to determine whether Plaintiffs' complaints establish a substantial question of federal law. They do not. Plaintiffs explain the EPA's registration process for pesticides under FIFRA and allege that a pesticide

---

[1] The EPA's registration review decision, which approves the use of Paraquat for up to 15 additional years, currently is being reviewed by the Ninth Circuit Court of Appeals. *See* Pet. For Review, *Cal. Rural Legal Assistance Found. v. EPA*, No. 21-71287 (9th Cir. Sept. 23, 2021), Doc. 1. The EPA's response brief is due on September 23, 2022. *Id.* at Doc. 39. Syngenta, which intervened in the matter, must file its brief by October 13, 2022. *Id.* at Doc. 40.

may be "misbranded" despite an EPA determination that it met FIFRA's registration criteria.[2] That is, a pesticide may be found to cause unreasonable adverse effects on humans when used according to the approved label despite a determination by the EPA that it would not. (*See, e.g.*, Case No. 22-pq-807 at Doc. 1-1, ¶ 57). But here Plaintiffs do not seek to impose any labeling or packaging requirements in addition to or different from those required under FIFRA, and they specifically seek relief only under state law. Thus, the labeling requirements under FIFRA only become an issue when one considers Defendants' affirmative defenses. *See City of Livingston v. Dow Chem. Co.*, No. C 05-03262 JSW, 2005 WL 2463916, at *3 (N.D. Cal. Oct. 5, 2005) ("FIFRA only becomes an issue in this case if Defendants raise preemption as a defense."). Accordingly, the Court finds that Plaintiffs' claims do not arise under federal law.

## II.   Diversity Jurisdiction

Having determined that these actions do not arise under federal law, these cases were only properly removed to federal court if they meet the requirements for diversity jurisdiction under 28 U.S.C. § 1332. That is, the suits must be between citizens of different states and the amount in controversy must exceed $75,000. *Id.* § 1332(a). A corporation is deemed to be a citizen of every state where it is incorporated and where it has its principal place of business. *Id.* § 1332(c).

In five of the six cases at issue here, there is no dispute that the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs. That cannot be

---

[2] *See* 7 U.S.C. § 136j(a)(1)(E). A pesticide is "misbranded" under FIFRA if, among other things: its labeling bears any statement, design, or graphic representation relative thereto or to its ingredients that is false or misleading, § 136(q)(1)(A); the labeling accompanying it does not contain directions for use that are necessary for effecting the purpose for which the product is intended and if complied with, together with any requirements imposed under § 136a(d), are adequate to protect health and the environment, § 136(q)(1)(F); or the label does not contain a warning or caution statement that may be necessary and if complied with, together with any requirements imposed under § 136a(d), is adequate to protect health and the environment, § 136(q)(1)(G).

said for *Willis v. Syngenta*, Case No. 22-pq-1102, where Plaintiff Jeff Clayton, one of seven named plaintiffs in the case, is a citizen of Delaware—just as Defendant Syngenta is a citizen of Delaware. Case No. 22-pq-1102 at Doc. 1. In its Notice of Removal, Syngenta contends this Court should exclude Mr. Clayton's citizenship for the purposes of determining diversity jurisdiction because he has been fraudulently misjoined as a plaintiff in order to destroy diversity. *Id.*

The Court disagrees. Time and again, this Court and other district courts throughout the Seventh Circuit have rejected the theory of fraudulent misjoinder as it applies to plaintiffs. *See, e.g.*, *Feeley v. Bayer Corp.*, No. 18-CV-2090-NJR-GCS, 2019 WL 4261545, at *4 (S.D. Ill. Sept. 9, 2019) (collecting cases and declining to recognize the doctrine of fraudulent misjoinder until instructed otherwise by the Seventh Circuit Court of Appeals). Indeed, the Seventh Circuit has cautioned that "[n]either § 1332 nor any case of which we are aware provides that defendants may discard plaintiffs in order to make controversies removable. It is enough that the claims be real, that the parties not be nominal." *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000). Even if an in-state plaintiff is "added to prevent removal, that is their privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum." *Id.*

Here, the claims of Mr. Clayton, a Delaware citizen, are just as "real" as those of the other plaintiffs in the complaint. Plaintiffs allege Mr. Clayton used, mixed, and/or was exposed to Paraquat from approximately 1968 to 1985 and has been diagnosed with and/or treated for Parkinson's disease in the years following his exposure. Mr. Clayton is not a nominal party, and the Court will not disregard him.

Because the parties in *Willis* are not completely diverse, the case should not have been

removed in the first place. Accordingly, the Court remands that case to Delaware state court for lack of subject matter jurisdiction.[3]

### III. The Forum-Defendant Rule

It is undisputed that the remaining five cases meet the requirements for diversity jurisdiction under § 1332(a). Yet, Plaintiffs argue the cases were improperly removed to federal court under the forum-defendant rule of 28 U.S.C. § 1441(b)(2). That section provides: "A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1442(b)(2) (emphasis added). Because Syngenta is a citizen of Delaware, and Plaintiffs filed their cases in Delaware, they argue that Syngenta should have been barred from removing the cases to federal court.

In response, Syngenta notes that it filed removal papers before it was served under Delaware law; thus, the forum-defendant rule did not preclude removal of the cases to federal court. Syngenta insists the Court should rely on the plain language of the statute and the meaning of "properly joined and served" in finding that it had not been served at the time of removal. And if it had not been served, then removal to federal court was appropriate.

As explained by the Seventh Circuit Court of Appeals, the forum-defendant rule is "designed to preserve the plaintiff's choice of forum, under circumstances where it is

---

[3] Plaintiffs did not initially raise the issue of lack of diversity in their motion to remand, but they later filed a "Further Motion for Remand and Fees" addressing the issue. (Doc. 8). This supplemental motion was filed before Syngenta responded to the initial remand motion. Syngenta moved to strike the supplemental motion because it raised issues that could and should have been previously raised. (Doc. 10). Furthermore, combining the two motions would exceed the 20-page limit provided in Local Rule 7.1(d).
   Syngenta's motion to strike is **DENIED**. The Court has an independent duty to confirm its subject matter jurisdiction, and it is clear from the face of the Notice of Removal (Doc. 1) that complete diversity did not exist at the time of removal. However, because neither the Seventh Circuit Court of Appeals nor the United States Supreme Court have addressed the validity of the fraudulent misjoinder doctrine, the Court finds Plaintiffs are not entitled to costs and fees under 28 U.S.C. § 1447(c).

arguably less urgent to provide a federal forum to prevent prejudice against an out-of-state party." *Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013) (quoting *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 380 (7th Cir. 2000)). In other words, the forum-defendant rule disallows federal removal premised on diversity in cases where the primary rationale for diversity jurisdiction—to protect defendants against presumed bias of local courts—is not a concern because at least one defendant is a citizen of the forum state. *Id.; see also* 16 MOORE'S FEDERAL PRACTICE – CIVIL § 107.55[1], at 107–108 ("The justification for the forum defendant rule is simple. The purpose of diversity jurisdiction is to provide litigants with an unbiased forum by protecting out-of-state litigants from local prejudices. Therefore, it makes no sense to allow an in-state defendant to take advantage of removal on the basis of diversity jurisdiction.").

Numerous district courts and law review authors have analyzed the legislative history behind the forum-defendant rule, noting that the "joined and served" language was added in 1948 to "to prevent gamesmanship by *plaintiffs*, who would name (but never plan on joining or serving) a strawman in-state defendant to defeat complete diversity." *In re Abbott Lab'ys, et al., Preterm Infant Nutrition Prod. Liab. Litig.*, No. 22 C 192, 2022 WL 2257182, at *3 (N.D. Ill. June 23, 2022) (citing *Spreitzer Properties, LLC v. Travelers Corp*, No. 21-CV-106-CJW-MAR, 2022 WL 1137091, at *5, --- F. Supp. 3d --- (N.D. Iowa Apr. 18, 2022)) (collecting cases).

In practice, however, the "properly joined and served" language has created a loophole for *defendants* that has only grown in size with the advent of electronic docketing. This tactic, known as "snap removal," allows Defendants who electronically monitor state court dockets to remove state court cases to federal court as soon as they are filed (or shortly thereafter)—despite the presence of a forum defendant in the lawsuit—and before the plaintiff even has a chance to effect service under the procedure required by a specific state's

law.

That is what Syngenta did here. It "snap" removed these five cases before Plaintiffs could serve it in accordance with Delaware law. For example, in Case No. 22-pq-807, the complaint was filed on April 1, 2022, in the Delaware Superior Court. Case No. 22-pq-807, Doc. 6-1. The complaint was "accepted" by the Prothonotary's office, file stamped, and posted on the public docket at 9:40 a.m. on April 5, 2022. *Id.* Plaintiff's counsel then hand-delivered the file-stamped copies of the complaint and related documents to the Prothonotary, whose job it is to issue a writ for service and provide notice to the Sheriff. *Id.* The Prothonotary, however, did not immediately issue the writ. *Id.* As a result, Syngenta was able to remove the case to federal court a mere *nine hours* after the complaint appeared on the public docket. *Id.* The Prothonotary did not issue a writ for service to the Sheriff until April 11, 2022, and the Sheriff completed service on April 13, 2022. *Id.* Thus, despite Plaintiffs' diligence in attempting to serve Syngenta, the matter was out of their hands.[4]

The Seventh Circuit has not specifically spoken on the issue of snap removal. *See Holmstrom v. Peterson*, 492 F.3d 833, 839 (7th Cir. 2007) (failure to comply with the forum-defendant rule is a defect other than subject matter jurisdiction and, thus, is unreviewable on appeal). Without guidance from the Court of Appeals, district courts in this Circuit have diverged on their interpretation of the statute.[5] *See Wragge v. Boeing Co.*, 532 F. Supp. 3d 616, 620 (N.D. Ill. 2021).

---

[4] Syngenta rejected Plaintiffs' attempts in subsequent cases to serve it with file-stamped copies of the complaint and summons. Case No. 22-pq-807, Doc. 6-1. Counsel for Syngenta indicated, in email communications between the parties, that the summons must be issued by the Prothonotary and served by the Sheriff for it to consider itself "properly" served under Delaware law. *Id.*

[5] Courts outside the Seventh Circuit also are split on the issue, although many adopt the plain-text approach to the "joined and served" language. *See W. Bend Mut. Ins. Co. v. MSPPR, LLC*, No. 20-CV-03308, 2021 WL 463259, at *2 (N.D. Ill. Feb. 9, 2021) (collecting cases).

Many, if not most, courts take the "plain language" approach to statutory construction in finding that removal is permitted if it occurs before an in-forum defendant is served. Under the plain language analysis, a court must give words their plain meaning "'unless doing so would (1) frustrate the overall purpose of the statutory scheme, (2) lead to absurd results, or (3) contravene clearly expressed legislative intent.'" *W. Bend Mut. Ins. Co. v. MSPPR, LLC*, No. 20-CV-03308, 2021 WL 463259, at *2 (N.D. Ill. Feb. 9, 2021) (quoting *United States v. Vallery*, 437 F.3d 626, 630 (7th Cir. 2006)). These courts find that § 1441(b)(2) is unambiguous in that only a "properly joined and served" defendant is a forum defendant barred from removing an action. *Id.* (citing 28 U.S.C. § 1441(b)(2)); *see also Knightsbridge Mgmt., Inc. T/A Knightsbridge Rest. Grp. v. Zurich Am. Ins. Co.*, 518 F. Supp. 3d 1248, 1253 (S.D. Ill. 2021) (collecting cases); *Wragge*, 532 F. Supp. 3d at 621 (same). The Second, Third, and Fifth Circuits, the only three appellate courts "to squarely consider the issue" have concluded that § 1441(b)(2) unambiguously "precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served." *In re Preterm Infant Nutrition Prod. Liab. Litig.*, No. 22 C 192, 2022 WL 2257182, at *4 (citing *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018); *Texas Brine Co., L.L.C. v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486–87 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019)).

A minority of courts prohibit pre-service removal when there is a resident defendant. Some find that the language of the forum-defendant rule is ambiguous, as it is silent as to when a forum defendant must be served in order to prevent removal, it does not plainly state that a forum defendant may remove a case before any parties are served, and the clause referring to "<u>any of the parties</u> properly joined and served" can be read to require service of at least one defendant. *Norwegian Air Shuttle ASA v. Boeing Co.*, 530 F. Supp. 3d 764, 768 (N.D.

Ill. 2021) (emphasis added).

Others reason that even if the statute is unambiguous, application of the statute leads to absurd results that frustrate the purpose of the forum-defendant rule. The court in *Norwegian Air* held that even if § 1441(b)(2) is unambiguous, a strict application of the statute leads to absurd results: "[C]onsidering the intent of the forum-defendant rule—which goes to the genuine interests and citizenship of the parties, not how quickly they are served with process—the Court concludes that the loophole for which Defendants advocate would lead to an absurd result, inconsistent with the statutory purpose." *Id.*

Finally, some courts have held that allowing an in-state defendant to remove a case immediately after it is filed, and before the plaintiff has a chance to serve it, defeats the purpose behind the forum-defendant rule. *See, e.g.*, *Kern v. Krso*, No. 1:20-CV-01404, 2020 WL 3960509, at *3 (N.D. Ill. July 13, 2020) (rejecting a "hyper technical" reading of § 1441(b)(2)'s plain language because it is contrary to Congressional intent); *Snider v. Chrysler Grp., LLC*, 2015 WL 12834237, *3 (N.D. Ill. Jan. 15, 2015) (a plaintiff's failure to serve a forum-state defendant prior to a defendant's removal did not allow court to ignore the forum-state defendant in determining the propriety of removal under Section 1441(b)(2)); *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 67 F. Supp. 3d 952, 961 (N.D. Ill. 2014) (noting the role of technology and that Congress did not add the "properly joined and served" language to reward defendants for conducting and winning a race); *Vivas v. Boeing Co.*, 486 F. Supp. 2d 726, 734 (N.D. Ill. 2007) (allowing snap removal "would frustrate the consistent efforts of both Congress and the courts to determine diversity jurisdiction based on the genuine interests of the parties to the controversy," as it would allow "defendants to manipulate the operation of the removal statutes.").

This Court agrees that permitting snap removal by an in-forum defendant frustrates the overall purpose of the statute. The "joined and served" language was added by Congress to prevent plaintiffs from gaming the system by adding in-forum defendants to avoid removal, only to later dismiss the in-state defendants without serving them. In other words, the language was intended to preserve the primary rationale for diversity jurisdiction—to protect foreign defendants against the presumed bias of local courts. *See Morris*, 718 F.3d at 665. But where a defendant is a citizen of the forum state, that presumed local bias *is no longer a concern*. *Id.* Allowing an in-state defendant to remove a case just hours after it is filed and before a plaintiff has an opportunity to serve the defendant under that state's requirements "smacks [] of forum shopping" by the defendant and reeks of the gamesmanship Congress intended to eliminate.[6] *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 67 F. Supp. 3d at 961 (citation omitted). The Court finds it illogical that Congress would intend for the "properly joined and served" language to permit snap removal, in effect "trumping . . . the very purpose for which the forum defendant rule was adopted to begin with." *Grimard v. Montreal, Maine & Atl. Ry., Inc.*, No. 13 C 6197, 2013 WL 4777849, *2 (N.D. Ill. Sept. 5, 2013).

Furthermore, allowing snap removal "essentially writes the forum-defendant rule out of existence for any defendants with the resources and wherewithal to monitor exhaustively local court filings." *Norwegian Air*, 530 F. Supp. 3d at 770. This interpretation of the statute, particularly for large corporate defendants in a pending MDL proceeding who are expecting

---

[6] In several cases that have followed the plain language of the statute, the courts have noted the *lack* of gamesmanship by the defendants. For example, in *Graff v. Leslie Hindman Auctioneers, Inc.*, a diverse defendant was served on September 7, 2017, and removed the case on September 19, 2017. 299 F. Supp. 3d 928, 937 n.7 (N.D. Ill. 2017). An in-state defendant was then served on September 21, 2017. *Id.* at 931. In denying the plaintiff's motion for remand and rejecting his arguments regarding the forum-defendant rule, the court noted that gamesmanship was not a concern considering nearly two weeks elapsed between the foreign defendant's service and removal of the action. *Id.* at n. 7. Thus, the court found, this situation was unlike "the docket-monitoring, jack rabbit, or snap removal that other courts have found to violate the spirit of the law." *Id.*

to be sued and are monitoring electronic dockets, would render § 1441(b)(2) a nullity. Certainly, Congress could not have foreseen or intended this outcome when it added the "properly joined and served" language in 1943. *Little v. Wyndham Worldwide Operations, Inc.*, 251 F. Supp. 3d 1215 (M.D. Tenn. 2017); *see also Vallejo v. Amgen, Inc.*, No. CV1303666BROMANX, 2013 WL 12147584, at *3 (C.D. Cal. Aug. 30, 2013) (allowing snap removal "would effectively circumvent Congress's entire statutory scheme and render § 1441(b)(2) superfluous. Such an application could not have been intended by Congress."). It would also lead to inconsistent results depending on the jurisdiction and its service requirements. *Id.*

Finally, the interpretation of § 1441(b)(2) supported by Syngenta frustrates Congress' intent and the courts' efforts to determine diversity jurisdiction based on the genuine interests of the parties to the controversy. Under the plain text of the statute, a defendant can take advantage of advances in technology that allow it to know the instant that a case is filed. Meanwhile, even the most diligent plaintiff must wait for the defendant to be "properly served" under state law. As demonstrated above, this process can take more than a week. The Court agrees with Judge Pallmeyer in the Preterm Infant Nutrition Products Liability Litigation that "[i]t is not rational for federal jurisdiction to turn on the promptness of action by a third party." 2022 WL 2257182, at *10. Nor is it logical to allow Syngenta to unilaterally determine the venue of a suit in which it is a defendant.

## CONCLUSION

For these reasons, the Court finds that a literal application of 28 U.S.C. § 1441(b)(2) frustrates the overall purpose of the statutory scheme and leads to absurd results. Accordingly, the Court **GRANTS** Plaintiffs' motions to remand in 22-pq-807, 22-pq-808, 22-

pq-809, 22-pq-893, 22-pq-894, and 22-pq-1102.

However, because neither the Seventh Circuit Court of Appeals nor the United States Supreme Court have disapproved of snap removal, the Court finds that Syngenta did not have an objectively unreasonable basis for seeking removal. Accordingly, Plaintiffs' counsel cannot recover costs and fees pursuant to 28 U.S.C. § 1447(c) for the time and effort spent briefing the motions to remand. *Davidson v. Bristol-Myers Squibb Co.*, No. Civ. 12-58-GPM, 2012 WL 1253165, at *5 n.3 (S.D. Ill. Apr. 13, 2012). Plaintiffs' requests for costs and fees are **DENIED**.

Finally, absent intervening authority from the Seventh Circuit Court of Appeals or the Supreme Court, this Order will govern all pending and future cases in this multidistrict litigation proceeding.

**IT IS SO ORDERED.**

DATED:   **August 30, 2022**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**